**FILED**

**JULY 8, 2009**
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT





**RECEIVED**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JUN 0 1 2009
Jun 01 2009
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

KEVIN SROGA,

    Plaintiff,

      v.

Samuel Decero Star # 429 Streets and
Sanitation Officer, (9-12) John Doe
Chicago Police Officers Individually,
and THE CITY OF CHICAGO

    Defendants.

**09CV3286**
**JUDGE GUZMAN**
**MAGISTRATE JUDGE BROWN**

)
)
)
)
)
)
)

COMPLAINT FOR VIOLATION OF ~~~~~~~~ AND
STATE SUPPLEMENTAL CLAIMS

JURY TRIAL DEMANDED

## CIVIL COMPLAINT

Plaintiff, **KEVIN SROGA**, who complains against Defendants, states as follows:

### NATURE OF CLAIM

1.    This Civil action is being brought pursuant to the violations of the United States

Constitution and the laws enacted thereunder seeking damages against the Defendants

specifically under the Civil Rights Act of 1871 (42 U.S.C. Section 1983) to redress

deprivations of Civil Rights of the Plaintiff that were accomplished by acts and or

omissions that these Defendants committed under color of state law during the course

of their employment activities.

### JURISDICTION AND VENUE

2.    Jurisdiction is based upon 28 U.S.C. Sections 1343, 1331, and 1367.

3.    Venue lies within the United States District Court, Northern District of Illinois, pursuant

to 28 U.S.C. Section 1391, because all events or omissions giving rise to this claim occurred

in this district.

## PARTIES

4.     At all times herein mentioned, Plaintiff, KEVIN **SROGA** ("Sroga" or "Plaintiff") who is a reasonable person was and is now a citizen of the United States and resides within the jurisdiction of this Court.

5.     At all times herein mentioned, Defendant Samuel **DECERO** Star # 429 ("Decero") was employed under the Department of Streets and Sanitation Division for the City of Chicago and acting under color of state law as an employee, agent, or representative for the City of Chicago. This Defendant is being sued in his individual/personal capacity.

6.     At all times herein mentioned Defendants **JOHN DOE Chicago Police Officers** ("John Does") were employed by the Chicago Police Department and were acting under color of state law as employees, agents, or representatives for the Chicago Police Department. These Defendants are being sued in their individual/personal capacity.

## STATEMENT OF FACTS

7.     On or about November 25th 2003, Plaintiff was alleged to have been involved in a hit-and-run accident involving a Chicago Police Department vehicle.

8.     On January 3rd 2006, Plaintiff was unrighteously convicted for being this alleged driver before the Circuit Court of Cook County.

9.     An Appeal was timely filed before the Illinois Appellate Court which was ultimately dismissed for want of prosecution because of ineffective counsel on the Plaintiff's behalf.

10.     Plaintiff is in the process of petitioning the Illinois Supreme Court on a Supervisory Order to remand this case back before the Illinois State Appellate Court.

11. Since being unrighteously convicted, Plaintiff has been "feeling the heat" and harassed by multiple City agencies such as the Building Department, Streets and Sanitation and the Chicago Police Department.

12. On July 6th 2006, Plaintiff had a very unpleasant encounter with Streets and Sanitation Supervisor Samuel **Decero** Star # 429 which ultimately led to the false arrest of the Plaintiff by members of the Chicago Police Department.

13. On May 30th 2007, Supervisor **Decero** returned to Plaintiff's property in accompany with four (4) Chicago Police Officers, three (3) of whom are John Does and the fourth, Officer Tarala, an already named defendant in case # 08 C 1789, and unlawfully seized personal property (multiple motored vehicles) belonging to the Plaintiff without authorization, legal justification or the Plaintiff's consent.

14. On July 9th 2007, Supervisor **Decero** unlawfully and illegally entered private property by cutting either a lock or chain securing such property from such intrusions, and then allowed to be removed additional vehicles knowing such vehicles belonged to the Plaintiff ultimately seizing Plaintiff's personal property without authorization, legal justification or the Plaintiff's consent.

15. On January 9th 2009, Plaintiff was ordered by the Court to represent himself Pro Se in case # 08 C 1789.

16. On May 11th 2009, Plaintiff requested Leave to File his First Amended Complaint under case # 08 C 1789 concerning the unlawful acts of Defendant **Decero**. That Motion was ultimately denied before the Honorable Guzman, triggering the filing of this new complaint.

17. Part of Case # 08 C 1789 alleges a conspiracy against members of the Chicago Police Department and those Officers involved in that case.

18. As part of the discovery process related to case # 08 C 1789, the 25th District / AREA 5 Police Department Headquarters were both requested and ordered photographed.

19. The first set of photographs tendered to the plaintiff were logged under FCLR_000161-000190 FCLR_ or (**161-190**) which showed the entire outside perimeter as well as the front and rear window sections of that Police facility.

**20.** Upon the City tendering said photographs to the Plaintiff, photographs FCLR_161-190 which were taken **first**, which clearly established No Loitering and or Trespassing sign(s) affixed, posted or installed anywhere on or in that facility.

**21.** Upon the City being ordered by the Court to take additional photographs, photographs logged under FCLR_000068-000091 (**68-91**) were produced.

**22.** The second set of photographs taken of the same front entryway now establishes that there is a No Loitering / Trespassing sign affixed in the front window of that Police facility which miraculously appeared in these second set of photographs **"only"** upon being tendered to the Plaintiff as part of the Discovery Process.

**23.** Plaintiff is well aware that a Police Station cannot have a No Trespassing sign affixed or installed upon or in it, especially, in the front of the building because a Police Station is a public facility open to the Public for many types of public related business.

**24.** The sign affixed on the inside of the front window of that Police facility appears to be affixed without proper legal authorization, and does not appear to be an Official Police Department sign Authorized by the City or a sign even belonging to the City of Chicago.

**25.** This No Loitering / No Trespassing sign erroneously affixed to the inside of this window appears to be a sign sponsored by AllState insurance company and not an official sign sponsored by the Chicago Police Department or the City of Chicago.

**26.** Upon discovering this information and being amazed and overwhelmed that there is now an unauthorized sign posted in an attempt to cover the illegal actions of at least two of the parties involved in case # 08 C 1789 and the Plaintiff having been ordered to represent himself Pro Se, Plaintiff took it upon himself to not waste any time and to further investigate other Police facilities in an effort to obtain other additional information / evidence to further establish this conspiracy against him.

**27.** Plaintiff then went to other Police facilities to gather this vital evidence as part of the Discovery Process to calculate if any of the other Police facilities had any similar signage posted on their premises as well.

**28.** On or about February 7th 2009, Plaintiff traveled to multiple Police facilities within the City of Chicago and began investigating to ascertain any additional

information deemed relevant in conjunction with any other type(s) of No Trespassing signs on any other Police related facilities.

29. On or about February 7th 2009, Plaintiff visited pretty much in this order the 16th, 17th, 20th , 24th , 23rd , 19th ,18th , 1st , 21st , 9th and 8th Police Districts and took vital photographic evidence of those grounds without incident except when photographing the grounds related to the 19th / AREA 3 Police Headquarters.

30. Upon photographing the grounds of the 19th / AREA 3 Police Headquarters, Plaintiff was approached by three Chicago Police Officers who inquired what it was Plaintiff was doing. Plaintiff explained without getting into too much detail that he was taking photographic evidence as part of an Investigation related to a Court case.

31. The Officers who stopped to inquire what Plaintiff was doing conversed with one another and determined that Plaintiff was not violation any law.

32. The Officers took down Plaintiff's information and then allowed Plaintiff to finish taking his photographs of the Police facility without further interference.

33. In the early morning of on or about February 8th 2009, Plaintiff arrived at the 11th District / Area 4 Police Headquarters to take additional photographic evidence of those grounds as well.

34. Just prior to finishing his investigation of those grounds, Plaintiff was approached by a Lieutenant by the first name of John.

35. The Lieutenant inquired what it was that the Plaintiff was doing and invited Plaintiff into the Police Station and into his office where he further interview Plaintiff and asked him his name.

36. On multiple occasions the Lieutenant inquired if Plaintiff belonged to Law Enforcement.

37. Each time being asked this question, Plaintiff stated that he was not with Law Enforcement.

38. Upon being further pressured by the Lieutenant, the Plaintiff revealed that he was only conducting research and taking photos as part of an ongoing investigation which required the taking of photographs of all related Police facilities located in Chicago to obtain certain vital information that he did not want to reveal or disclose.

39. After being pressured even further by the Lieutenant concerning the Plaintiff's investigation the Plaintiff then wrote a name and a telephone # down on a piece of paper and stated to the Lieutenant that "if you would like to know more about this maybe this guy can tell you."

40. The Lieutenant handed the Plaintiff one of his business cards prior to leaving to go to his next destination, the 10th District Police facility down the street.

41. The Plaintiff then arrived at the 10th District / Ogden Police facility to take more photographic evidence in support his 08 C 1789 case.

42. Shortly upon taking his photographic evidence of this outside public facility, Plaintiff was swarmed by several Police Officers for no apparent or justifiable reason and was then immediately escorted into the Police Station for unjustified reasoning.

43. Plaintiff was now illegally seized as he was not allowed to leave or move freely or go about his business.

44. Plaintiff was ultimately stopped, seized, detained, searched, questioned and put into handcuffs for approximately two and a half-hours all without probable cause or reasonable suspicion that Plaintiff committed or was about to commit any crime.

45. Upon unlawfully seizing and detaining Plaintiff, Plaintiff was searched by several Chicago Police Officers where Officers unlawfully obtained a set of keys belonging to the Plaintiff.

46. Upon the Plaintiff being unlawfully restrained, members of that same Police facility had inquired on several occasions where Plaintiff had parked his vehicle.

47. Plaintiff responded that he did not have a vehicle as he was dropped off and did not drive.

48. Officers stated to the Plaintiff to **"quit fucking around"** in a very aggressive manner.

49. Officers then took Plaintiff's set of keys which contained several vehicle keys on Plaintiff's key ring as well as his house keys and began searching for a vehicle belonging to the Plaintiff for well over an hour while searching on both the neighboring streets as well as in the Police parking lot of the 10th District.

50. Officers unlawfully attempted to locate a vehicle belonging to the Plaintiff that was not anywhere on scene to conduct an illegal search of Plaintiff's vehicle without any authorization, consent or legal justification.

51. These Officers even attempted to enter several vehicles that were not owned or being operated by the Plaintiff with the Plaintiff's set of keys.

52. The Police had aggressively searched the Police Parking lot as well as neighboring streets in an attempt to locate a vehicle belonging to the Plaintiff for the **"sole"** purpose of conducting an illegally search without probable cause or reasonable suspicion that Plaintiff violated or was about to violate any law.

53. The Officers ultimately had negative results in ascertaining Plaintiff's vehicle.

54. During the course of Plaintiff being unlawfully searched and seized, the business card given to the Plaintiff by the Lieutenant from the 11th District earlier that morning was ultimately discovered.

55. When Chicago Police Department members questioned Plaintiff about the card, Plaintiff exercised his constitutional right and remained silent.

56. The Officers eventually contacted the Lieutenant from the neighboring Police District where the same Lieutenant soon relocated arriving at the 10th Police District to re-encounter Plaintiff.

57. While still in handcuffs, the Lieutenant and the Plaintiff then had a lengthy conversation where the Lieutenant had lost his cool and accused Plaintiff of making statements that Plaintiff never made and tried to put words into the mouth of the Plaintiff during this unlawful seizure and interview.

58. An additional unprofessional, unprovoked and inappropriate statement was also made to the Plaintiff by the Lieutenant during the course of this conversation that referenced **"the only courtesy that I owe you is a bologna sandwich and an overnight jail stay courtesy of the Chicago Police Department."**

59. This conversation was held in a side room between Plaintiff and the Lieutenant and had ended when the Lieutenant leaving the room stated to the Plaintiff to **"hold tight while we see what were going to charge you with."**

**60.** Approximately ten (10) to fifteen (15) minutes later, Plaintiff was released from handcuffs, escorted out of the Police facility and ordered to stay off all Police property by the Lieutenant.

**61.** The Lieutenant also stated that he was going to notify all of the other Police Districts to be on the lookout for the Plaintiff and that he was also going to issue an investigative alert against him.

**62.** Plaintiff has personal knowledge that an investigative alert was in fact established and sent out to all other Police Districts without any probable cause, reasonable belief or articulable suspicion that Plaintiff violated, was going to violate or is going to violate any law and commit a crime, while knowing first hand why the Plaintiff was in fact taking such photographic evidence and its purposes.

**63.** As a direct and proximate result of the acts of the defendants described above, Plaintiff suffered deprivations of his Constitutional Rights and continues to suffer damages including emotional distress, mental anguish, humiliation, and deprivation of his personal property from its uses and benefits as well as lost wages.

**64.** The aforementioned acts of the Defendants were willful, wanton, malicious, oppressive and done with reckless indifference to and/or callous disregard for Plaintiff's Constitutional Rights and justify the award of exemplary and punitive damages in an amount to be ascertained according to proof at the time of trial.

## COUNT I

**Plaintiff against Defendants for Unreasonable Seizures of Personal Property**

**65.** Plaintiff hereby incorporates and re-alleges paragraphs one (1) through sixty-four (64) as if fully set forth herein.

**66.** On May 30th 2007, Defendant Decero accompanied by three (3) John Doe Chicago Police Officers and Officer Tarala, intentionally and unlawfully entered private property and then intentionally caused to be illegally removed personal property (**multiple motored vehicles**) belonging to the Plaintiff, ultimately seizing

8

such personal property without authorization, legal justification or Plaintiff's consent. In doing this, Defendants also committed the act of Trespassing to Real Property.

67. On July 9th 2007, Defendant Decero unlawfully and forcefully entered private property that was locked and secured by cutting either a chain and/or lock securing such premises that would have prevented such intrusions from transpiring, and then intentionally caused to be illegally removed personal property (**multiple motored vehicles**) belonging to the Plaintiff, ultimately seizing such personal property without authorization, legal justification or Plaintiff's consent. In doing so, Defendant Decero committed the act of Criminal Damage to Property and Trespassing to Real Property.

68. Defendant Decero's conduct directed towards Plaintiff was intentional, willful wanton, malicious and was also in violation of Plaintiff's right to Due Process.

69. Defendant Decero's conduct had a direct result on the deprivation of the Plaintiff's Constitutional rights and on his personal property which ultimately prevented the Plaintiff from enjoying its personal use and benefits, ultimately interfering with Plaintiff's hobbies, enjoyment and financial benefits thereof.

70. By reason of Defendant Decero's conduct, Plaintiff was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and the laws enacted thereunder. Therefore, Defendants are liable pursuant to 42 U.S.C Section 1983.

## COUNT II
### Plaintiff against John Doe Defendants for Civil Conspiracy

71. Plaintiff hereby incorporates and re-alleges paragraphs one (1) through sixty-four (64) as if fully set forth herein.

72. Defendant John Doe Officers knowingly and intentionally schemed and worked together in a common plan to unlawfully install a Non- Authorized , No Loitering / No Trespassing sign in one of the front windows upon entering the front of 25th District / AREA 5 Police Headquarters resulting in the interfering of evidence related to case # 08 C 1789 currently before this District Court.

73. By reason of the Defendants conduct which included a meeting of the minds to concert an unlawful agreement and without legal authorization to install a Non- City regulated AllState Insurance sponsored sign to effortly discredit the Plaintiff and/or cover the unlawful actions of the parties involved in relation to case # 08 C 1789 constitutes a conspiracy.

74. As a result of the Defendants conduct, Plaintiff was deprived of rights, privileges and immunities secured to him under the Constitution of the United States and the laws enacted thereunder. Therefore, Defendants are liable pursuant to 42 U.S.C Section 1983 for conspiracy.

## COUNT III
### Plaintiff against John Doe Defendants for Illegal Search and Seizure

75. Plaintiff hereby incorporates and re-alleges paragraphs one (1) through sixty-four (64) as if fully set forth herein.

76. On or about February 8th 2009, Plaintiff was illegally stopped, detained, searched, seized, questioned and ultimately placed in handcuffs for unjustifiable reasoning for approximately two and a half (2 ½ ) hours without probable cause, reasonable suspicion or legal justification that Plaintiff violated or was about to violate any federal, state or local law.

77.     By reason of the Defendants conduct, Plaintiff was deprived of rights, privileges
and immunities secured to him by the Fourth Amendment as guaranteed by the
Fourteenth Amendment, to be free from unreasonable searches and seizures.
Therefore, Defendants and each of them are liable pursuant to 42 U.S.C. Section
1983.

## COUNT IV
### Plaintiff against John Doe Defendant for Excessive Force

78.     Plaintiff hereby incorporates and re-alleges paragraphs one (1) through sixty-four
(64) as if fully set forth herein.

79.     Plaintiff acknowledges while he was already in custody for approximately
twenty-minutes, Plaintiff's name was ran via Police computer by one of these
unknown John Doe Police Officer's.

80.     Upon receiving Plaintiff's history concerning his background, Plaintiff was
immediately placed into securing devices (Hand Cuffs). These securing devices
applied over tightly, ultimately stayed affixed on the Plaintiff's wrists bounding his
hands and arms behind his back for approximately two-hours.

81.     During the time frame that Plaintiff was unlawfully restrained with these securing
devices (hand Cuffs), his wrists began to hurt and his shoulders began to "Lock-up"
causing the Plaintiff extreme discomfort, pain and numbness.

82.     There was no legal justification or any justifiable reason as to why the Plaintiff
was ever put into securing devices (hand cuffs) that bounded his hands behind his
back, and then allowed to remain in that state of position for two-hours as he was
already in custody, co-operating, not being combative nor posing any type of threat.

11

**83.**     By reason of the Defendant Officer's conduct, violated the Plaintiff's Fourth

Amendment right as guaranteed by the Fourteenth Amendment under the United

States Constitution to be free from the use of excessive and unreasonable force.

Therefore, Defendant is liable pursuant to 42 U.S.C. Section 1983.

**COUNT V**

**Plaintiff against Defendant Officers for Conspiracy to Deprive Constitutional Rights**

**84.**     Plaintiff hereby incorporates and re-alleges paragraphs one (1) through sixty-four

(64) as if fully set forth herein.

**85.**     Upon the Plaintiff being unlawfully seized and detained, Defendant Officers

worked a denial of Plaintiff's rights by concerting amongst themselves to illegally

and unlawfully search Plaintiff in ascertaining possession of keys without legal

justification, authorization or consent, and then entered into an agreement amongst

themselves in an attempt to locate Plaintiff's vehicle for the **"sole purpose"** of

conducting an illegal, unauthorized and an unjustifiable search of Plaintiff's property.

**86.**     The Defendant Officers, acting in concert, conspired by concerted action to

accomplish an unlawful purpose by unlawful means that included attempting to gain

entry into vehicles (not belonging to the Plaintiff) with the illegal use of the Plaintiff's

keys.

**87.**     In furtherance of this conspiracy, each of the co-conspirators committed overt

acts and were otherwise willful participants in joint activity that was unlawful.

**88.**     The misconduct described in this Count was undertaken with malice, willfulness,

and reckless indifference to the Plaintiff's rights. Therefore, Defendants are liable

pursuant to 42 U.S.C Section 1983.

## COUNT VI

### Plaintiff against Defendants for Violation of Due Process Rights

89.    Plaintiff hereby incorporates and re-alleges paragraphs one (1) through sixty-four

(64) as if fully set forth herein.

90.    While acting under color of state law, Defendants deprived Plaintiff of his Due

Process rights secured to him specifically under the Fourteenth Amendment to the

United States Constitution.

91.    Defendants engaged in multiple acts of violating Plaintiff's Rights that included,

but are not limited to seizing Plaintiff's personal property, seizing Plaintiff,

conspiring to locate Plaintiff's vehicle to conduct an illegal breach and search of such

vehicle in furthering to deprive Plaintiff's Constitutional Rights.

92.    These acts directed towards Plaintiff were intentionally willful, malicious,

wanton, and were in violation of Plaintiff's Constitutional Rights.

93.    By reason of the Defendants conduct, Plaintiff was deprived of rights, privileges,

and immunities secured to him by the Fourth and Fourteenth Amendments to the

Constitution of the United States and the laws enacted thereunder. Therefore, all

Defendants and each of them are liable pursuant to U.S.C. Section 1983.

## COUNT VII

### Plaintiff against Decero and John Doe Defendants for Supervisory Liability

94.    Plaintiff hereby incorporates and re-alleges paragraphs one (1) through sixty-four

(64) as if fully set forth herein.

95.    At least four (4) different Defendants in this complaint hold the rank of a

Supervisor in some way shape or form through their scope of employed positions.

**96.** Defendant Supervisors acting under color of state law failed to exercise a **"duty to intervene"** that initiated and/or allowed to transpire by turning a blind eye that allowed continuing the intentional deprivations of Plaintiff's Constitutional rights.

**97.** By reason of the Defendants conduct, Plaintiff was deprived of rights, privileges and immunities secured to him by the Fourth Amendment as guaranteed by the Fourteenth Amendment to the United States Constitution and the laws enacted thereunder. Therefore, all Defendant Supervisors are liable under the Supervisory Doctrine pursuant to 42 U.S.C. Section 1983.

## COUNT VIII

### Plaintiff against all Individual Defendants for Failure to Intervene

**98.** Plaintiff hereby re-alleges and reincorporates all previous paragraphs.

**99.** All Defendants acting under color of state law during the course of their employment and while on duty had a **"duty to intervene"** to either stop and or prevent the deeds of misconduct generated by their fellow colleagues and supervisors.

**100.** Defendants failed to exercise diligently in one way or another and violated their own "duty to intervene" as sworn members of a City/ Municipal/ Governmental agency during the scope of their employment in the prevention of Plaintiff's Constitutional Rights from being intentionally, willfully, maliciously, wantonly and unjustifiably violated in a reckless manner by fellow colleagues and subordinates.

**101.** By reason of the Defendants conduct for failing to Intervene, Plaintiff was deprived of rights , privileges and immunities secured to his by the Fourth and Fourteenth Amendments to the Constitution of the United states and the laws enacted thereunder. Therefore, Defendants are liable under the Failure to Intervene doctrine pursuant to 42 U.S.C. Section 1983.

14

## COUNT IX

### Municipal Liability

**102.** Plaintiff hereby re-incorporates and re-alleges all previous paragraphs.

**103.** The Defendant City of Chicago is a Municipal corporation established under its own "Home Power Rules" and Regulations.

**104.** The Defendant City of Chicago failed to take the necessary precautions to adequately Train and Supervise its Officer agents'.

**105.** The Defendant City of Chicago and its agent officers worked a "deliberate indifference" to deprive Plaintiff's Constitutional Rights on multiple occasions.

**106.** These deliberate indifferences can only be attributed to the City of Chicago's failure to train and supervise its agents. Therefore, Defendant City of Chicago is liable under the Municipal Liable doctrine pursuant to 42 U.S.C. Section1983.

## COUNT X
### RESPONDEAT SUPERIOR

**107.** Plaintiff hereby re-incorporates and re-alleges all previous paragraphs.

**108.** All Defendants-Officers were either members or agents of the Chicago Police Department and or Department of Streets and Sanitation Division employed by the City.

**109.** In committing these intentionally willful, malicious and wanton acts against Plaintiff, Defendants committed them while acting under color of state law through the scope of their employment.

**110.** Defendant City of Chicago is the Municipal employer of all Defendants.

**111.** Pursuant to *respondeat superior*, Defendant CITY OF CHICAGO, as principal, is liable for its agents' actions.

112.    As a proximate cause of Defendant Officers unlawful acts which occurred within

their scope of their employment activities, Plaintiff suffered and continues to suffer from

severe and extreme damages including but not limited to, financial, psychological, mental

and emotional distress and anguish, physical damage, anxiety, fear, humiliation, traumas,

loss of liberty, loss of personal property and the usage rights thereof.

**COUNT XI**

**Indemnification Claim Under 745 ILCS 10/9-102**

113.    Illinois law provides that public entities are directed to pay any tort judgment

compensatory damages for which employees are liable within the scope of their

employment activities.

114.    The acts of the individual Defendant –Officers described in the above claims were

willful, wanton and maliciously committed during the scope of their employment.

115.    Pursuant to the Illinois Tort Immunity Act, **745 ILCS 10/9-102**, Defendant CITY

OF CHICAGO is liable for any judgments in this case arising from the actions of the

Defendant personnel and its Officers or agents.


**WHEREFORE**, the Plaintiff, Kevin Sroga, respectfully requests judgment as follows

against the Defendants, and each of them on all claims and to:

1.    Order the City of Chicago to turn over the names of any Investigators, Police
Officers or Persons who took or were involved in taking of both sets of
photographs as well as the dates on when such photos were taken in association
with Case # 08 C 1789 of the 25th Police District / AREA 5 Police Headquarters
in conjunction with this suit;

2.    Immediately Oder the City of Chicago to co-operate with Plaintiff and to allow
the Plaintiff to view and or turnover any names and photographs of unknown
John Doe Defendants from the 10th Police District so that they may be properly
identified for this suit without further delay;

3.      Order the City of Chicago to continue to hold Plaintiff's vehicles still in custody of the City Auto Pounds logged under the inventory #'s that are attached hereto this complaint pending the litigation of this suit;

4.      Require the Defendants to pay the Plaintiff, general / compensatory damages, including emotional distress, in a sum to be determined at trial;

5.      Require the Defendants to pay the Plaintiff special damages in a sum to be determined at trial;

6.      Require the Defendants to pay the Plaintiff punitive and exemplary damages in a sum to be determined at trial;

7.      Require the Defendants to pay the Plaintiff's costs of the suit herein incurred;

8.      Order Defendant CITY OF CHICAGO to indemnify the Defendant-Officers for any judgment entered in this case arising from their actions;

9.      Require and or Award such other and or additional relief that this Honorable Court deems just, equitable and proper.


## PLAINTIFF DEMANDS TRIAL BY JURY


**Respectfully submitted,**

*Kevin Sroga*

**Kevin Sroga**
Kevin Sroga
3343 W. Crystal
Chicago, IL 60651
(773) 401-2716

Affidavit -

I, Kevin Sroga, Plaintiff in the above matter hereby certify that everything that has been set forth in this complaint to be entirely accurate and truthful to the best of his knowledge under penalties of perjury prescribe under law.

x *Kevin Sroga*

THIS PERSON IS SUBSCRIBED AND
SWORN TO ME ON THIS DATE

JUN 0 1 2009

DATE    OFFICIAL SEAL
        SIGNATURE
    **Chris DiDomenico**
Notary Public, State of Illinois
My Commission Expires 01/29/2012

Dated before me this 1st Day of June 2009.

x *Kevin Sroga*

17

**Dear Bruce** and or Traffic Services Personnel, here is a copy of the vehicles that are currently being held. I need this hold to continue. I had discussed this with City Attorney Ms. Andrea Cook, on May 14th 09, she has no objection continuing the hold on these vehicles. I'm currently trying to ascertain a Court order to continue these holds as part of ongoing litigation so that we don't have to keep renewing these holds every six weeks.

Inventory #'s:
1523019 – Black crown Victoria 1997
1523020 - White 1997 Crown Victoria
1523021 - 1990 E- 350 Ford van
1523022 - Boat or trailer
1523023 - 1977 century boat and trailer
1523024 -1993 Ford pick-up truck E-250
1523025 - 1987 Cadillac
1523360   White Crown Victoria
1523361   Chevy Caprice
1523362   Chevy Caprice
1523363   Crown Victoria
1523364   Chevy Astro van either an 1988 of 1993
1523365   **Chevy Caprice**
1523366   Crown Victoria
1523367   Crown Victoria
1523368   Crown Victoria
1523369   Chevy
1523370   1993 Ford pick –up
1523371   Chevy astro- either an 1989or 1993
<u>1523372</u>   1994 Red Chevy Caprice- I believe the inventory # was 1523358 and understand this vehicle is no longer in custody of the pound.
1523373   Chevy Caprice
1523375   Crown Victoria
6520562   1988 Pontiac Grand Am
6511346   1996 Crown Victoria
6557306   Ford Crown Victoria
6572908   Ford Crown Victoria
6575506   Ford Crown Victoria
2531913 - 1997  Crown Victoria: VIN: 2FALP71W5VX214999
2543355- 1996  Crown Victoria: VIN: 2FALP71W4TX157711
2484069   1997 Ford Van
2503987   1991 Mazda 626
2599840   1991 GMC Ventura

1992 -Chevy Caprice Blue in color, VIN: 1G1BL5373NR148693
1996 Ford Van E-250 White in color 1FTFE24H0THB37632

Sincerely,

Kevin Sroga -773-401-2716 – Cell.                              **6/1/09**





NO
LOITERII
NO
TRESPASS
25th DISTRICT POLICE.

Sroga, 08 C 1789

FCRL_000071

FCRL_000074

Stroga 08 C 1789



Chicago Police Department Area 5 Headquarters
View of Front Door W/Sign Posted Center Right



Chicago Police Department Area 5 Headquarters
View of Sign Posted at Front Door
Visible to Anyone Entering or Exiting the Building
From All Directions